J-S51037-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | | |
|---|---|---|---|
| M.Y. | | : | IN THE SUPERIOR COURT OF |
| | Appellant | : | PENNSYLVANIA |
| | | : | |
| | v. | : | |
| | | : | |
| H.Y. | | : | |
| | | : | No. 911 MDA 2020 |

Appeal from the Order Entered June 12, 2020
In the Court of Common Pleas of Dauphin County Civil Division at No(s):
2017-CV-8550-CU

BEFORE:  MURRAY, J., McLAUGHLIN, J., and McCAFFERY, J.

MEMORANDUM BY McCAFFERY, J.:                **FILED JANUARY 28, 2021**

M.Y. (Father) appeals from the order entered in the Dauphin County Court of Common Pleas, granting him and H.Y. (Mother) shared legal custody of their children, L.Y. (born in December 2007), R.Y. (born in April 2009), and P.Y. (born in January 2012) (collectively, the Children), and Mother primary physical custody, pursuant to her notice of proposed relocation to Wantagh, Nassau County, New York and petition for modification.  After review, we affirm the trial court's order.

The parties married in September 2009, and Father filed for divorce in August 2017.  On December 12, 2017, Father initiated the within matter and filed a complaint for shared child custody, along with a petition for emergency custody relief.  On February 21, 2018, the parties settled on a 2-2-5-5 shared physical custody schedule, with Mother having custody Mondays and Tuesdays, Father having custody Wednesdays and Thursdays, and the parties alternating weekends.  *See* N.T., 6/8/20, at 9, 78; Order of Court – Parenting

Plan, 2/21/18, at 2 (unpaginated). At the time of the underlying June 8, 2020,

custody hearing, the parties' divorce was not finalized. N.T., 6/8/20, at 5, 78.

The trial court summarized the relevant procedural and factual history

as follows:

On February 26, 2020, [Mother] filed a Notice of Relocation along with a Petition for Modification of the February 21, 2018, Parenting Plan, as supplemented by orders dated April 18, 2019, May 10, 2019, and September 11, 2019. [Mother sought primary physical custody of the children, and sought to relocate with them to Wantagh, New York.]

\*     \*     \*

Father and Mother separated in August 2017. Mother stayed in the former marital home, and Father [vacated the home in November 2017.[1]] Mother hoped to keep the family home through equitable distribution as part of the divorce, but due to Father's failure to pay the mortgage and his support obligations in a timely manner the home was placed in foreclosure and was scheduled to be sold at a Sheriff's sale in July 2020. Mother then sought to relocate to Wantagh, New York, where Father and Mother are both originally from,[2] feeling it would benefit the [C]hildren and Mother emotionally and financially. Mother proposes to purchase a home with her paramour, [T.C.], who is a New York City firefighter. Since separation, Father and Mother have shared physical custody of the [C]hildren pursuant to a 2-2-5-5 schedule[.] The [C]hildren settled into the custody schedule, which satisfactorily met their needs. In March 2020, Father was

---

[1] *See* Father's Complaint for Shared Child Custody, 12/12/17, at ¶ 6.

[2] Father grew up on Long Island, New York near Wantagh. N.T., 6/8/20, at 24. Mother testified she moved to Long Island after high school and lived there for eight years. *Id.* at 24.

arrested during his parenting time[3] prompting Mother to file an Emergency Petition for Special Relief which the [c]ourt denied.

Opinion in Support of Order Pursuant to Rule 1925(a), 8/17/20, at 1-2 (1925(a) Op.).[4]

The trial court conducted a hearing on June 8, 2020. Mother and Father, represented by counsel, each testified on their own behalf. In addition, Mother presented the testimony of her boyfriend, T.C., and her father, H.H. — the Children's maternal grandfather. Father presented the testimony of his mother, P.Y. — the Children's paternal grandmother.[5] The court further spoke with the oldest child, L.Y., *in camera*, on June 11, 2020.[6]

Thereafter, by order dated and entered June 12, 2020, the trial court awarded the parties shared legal custody, and Mother primary physical

---

[3] Father was arrested on an outstanding bench warrant related to a business deal and/or contract in Virginia. N.T., 6/8/20, at 104-09; **see also** Defendant's Exhibit 14.

[4] We note the trial court issued two opinions. First, it filed a 14-page Memorandum Opinion on June 12, 2020, on the same day as the underlying order. We cite to this opinion, **infra**, as "Memo. Op." The court also filed, on August 17, 2020, a 4-page Opinion in Support of Order Pursuant to Rule 1925(a), which incorporates the June 12th memorandum opinion.

[5] The proceeding was conducted via video conference due to the COVID-19 pandemic. N.T., 6/8/20, at 1.

[6] We observe that no transcript of L.Y.'s interview was included as part of the certified record. Nonetheless, there does not appear to be any dispute that L.Y. indicated her desire to retain the status quo.

custody commencing August 17, 2020, pursuant to her notice of proposed relocation to Wantagh, New York and petition for modification. The court granted Father partial physical custody during the school year: two weekends each month,[7] and winter and spring recess. During the summer, the court further granted Father partial physical custody from seven days after the last day of the school year until fourteen days prior to the start of the next school year. The court additionally provided for, *inter alia*, a holiday schedule; a custodial exchange location, if unable to be agreed upon; reasonable telephone, video, and/or email contact; and individual counseling for the Children, as needed. As stated above, the court issued a contemporaneous Memorandum Opinion, which addressed both the statutory relocation and custody factors.

On July 2, 2020, Father filed a timely, counseled notice of appeal, along with a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b).

Father raises the following issue for our review:

> Whether the Trial Court erred as a matter of law and abused its discretion by approving Mother's relocation and failing to properly apply the necessary factors in determining if the proposed relocation is in the best interests of the subject minor children.

---

[7] The court provided, "Father's weekend custodial periods during the school year shall include all three-day or extended weekend breaks, which will then count toward Father's monthly weekend custodial periods." Custody Order – Parenting Plan, 6/12/20, at ¶13.

Father's Brief at 4.

We note the relevant standard of review:

In reviewing a custody order, our scope is of the broadest type and our standard is abuse of discretion. We must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses first-hand. However, we are not bound by the trial court's deductions or inferences from its factual findings. Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record. We may reject the conclusions of the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court.

*C.R.F. v. S.E.F.*, 45 A.3d 441, 443 (Pa. Super. 2012) (citation omitted).

This Court consistently has held:

[T]he discretion that a trial court employs in custody matters should be accorded the utmost respect, given the special nature of the proceeding and the lasting impact the result will have on the lives of the parties concerned. Indeed, the knowledge gained by a trial court in observing witnesses in a custody proceeding cannot adequately be imparted to an appellate court by a printed record.

*Ketterer v. Seifert*, 902 A.2d 533, 540 (Pa. Super. 2006) (citation omitted).

In addition,

[a]lthough we are given a broad power of review, we are constrained by an abuse of discretion standard when evaluating the court's order. An abuse of discretion is not merely an error of judgment, but if the court's judgment is manifestly unreasonable as shown by the evidence of record, discretion is abused. An abuse of discretion is also made out where it appears from a review of the record that there is no evidence to support the court's findings or that there is a capricious disbelief of evidence.

*M.A.T. v. G.S.T.*, 989 A.2d 11, 18-19 (Pa. Super. 2010) (*en banc*) (citations

omitted).

The paramount concern in any custody case under the Child Custody Act[8] is the best interests of the child. **See** 23 Pa.C.S. §§ 5328 ("In ordering any form of custody, the court shall determine the best interest of the child by considering all relevant factors . . . ."), 5338 ("Upon petition, a court may modify a custody order to serve the best interest of the child.").

Section 5323 of the Act provides for the following types of awards:

> **(a) Types of award.—**After considering the factors set forth in section 5328 (relating to factors to consider when awarding custody), the court may award any of the following types of custody if it is in the best interest of the child:
>
> (1) Shared physical custody.
>
> (2) Primary physical custody.
>
> (3) Partial physical custody.
>
> (4) Sole physical custody.
>
> (5) Supervised physical custody.
>
> (6) Shared legal custody.
>
> (7) Sole legal custody.

23 Pa.C.S. § 5323(a)(1)-(7).

Section 5328(a) sets forth the best interest factors that the trial court must consider in awarding custody:

> **§ 5328.  Factors to consider when awarding custody**

---

[8] 23 Pa.C.S. §§ 5321-5340.

**(a) Factors.**—In ordering any form of custody, the court shall determine the best interest of the child by considering all relevant factors, giving weighted consideration to those factors which affect the safety of the child, including the following:

(1) Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.

(2) The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child.

(2.1) The information set forth in section 5329.1(a)(1) and (2) (relating to consideration of child abuse and involvement with protective services).

(3) The parental duties performed by each party on behalf of the child.

(4) The need for stability and continuity in the child's education, family life and community life.

(5) The availability of extended family.

(6) The child's sibling relationships.

(7) The well-reasoned preference of the child, based on the child's maturity and judgment.

(8) The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm.

(9) Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.

(10) Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.

(11) The proximity of the residences of the parties.

(12) Each party's availability to care for the child or ability to make appropriate child-care arrangements.

(13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.

(14) The history of drug or alcohol abuse of a party or member of a party's household.

(15) The mental and physical condition of a party or member of a party's household.

(16) Any other relevant factor.

23 Pa.C.S. § 5328(a)(1)-(16).

Furthermore, where a parent requests relocation of a child, the trial court must consider the following ten relocation factors set forth in Section 5337(h) of the Act:

**(h) Relocation factors.—**In determining whether to grant a proposed relocation, the court shall consider the following factors, giving weighted consideration to those factors which affect the safety of the child:

(1) The nature, quality, extent of involvement and duration of the child's relationship with the party proposing to relocate and with the nonrelocating party, siblings and other significant persons in the child's life.

(2) The age, developmental stage, needs of the child and the likely impact the relocation will have on the child's physical, educational and emotional development, taking into consideration any special needs of the child.

(3) The feasibility of preserving the relationship between the nonrelocating party and the child through suitable custody arrangements, considering the logistics and financial circumstances of the parties.

(4) The child's preference, taking into consideration the age and maturity of the child.

(5) Whether there is an established pattern of conduct of either party to promote or thwart the relationship of the child and the other party.

(6) Whether the relocation will enhance the general quality of life for the party seeking the relocation, including, but not limited to, financial or emotional benefit or educational opportunity.

(7) Whether the relocation will enhance the general quality of life for the child, including, but not limited to, financial or emotional benefit or educational opportunity.

(8) The reasons and motivation of each party for seeking or opposing the relocation.

(9) The present and past abuse committed by a party or member of the party's household and whether there is a continued risk of harm to the child or an abused party.

(10) Any other factor affecting the best interest of the child.

23 Pa.C.S. § 5337(h)(1)-(10).

Further, with regard to the custody and relocation factors, we have

stated as follows:

"**All** of the factors listed in [S]ection 5328(a) are required to be considered by the trial court when entering a custody order." Section 5337(h) requires courts to consider all relocation factors. The record must be clear on appeal that the trial court considered all the factors. The record must be clear on appeal that the trial court considered all the factors.

Section 5323(d) provides that a trial court "shall delineate the reasons for its decision on the record in open court or in a written opinion or order." 23 Pa.C.S.[ ] § 5323(d). Additionally, "[S]ection 5323(d) requires the trial court to set forth its mandatory assessment of the sixteen [Section 5328(a) custody] factors prior to the deadline by which a litigant must file a notice of appeal." . . .

In expressing the reasons for its decision, "there is no required amount of detail for the trial court's explanation; all that is required is that the enumerated factors are considered and that the custody decision is based on those considerations." A court's explanation of reasons for its decision, which adequately addresses the relevant factors, complies with Section 5323(d).

*A.V. v. S.T.*, 87 A.3d 818, 822-23 (Pa. Super. 2014) (some citations omitted).

In its opinion accompanying the underlying order, the trial court addressed the custody factors pursuant to Section 5328(a) and relocation factors pursuant to Section 5337(h). The court stated as follows:

### **Relocation Factors**

**Relocation Factor 1: The nature, quality, extent of involvement and duration of the children's relationships with the party proposing to relocate and with the nonrelocating party, siblings and other significant persons in the children's lives.**

Both parents currently live in the Hummelstown area and share physical custody of [the Children], since the entry of the February 21, 2018, custody order. The [C]hildren have an attachment to Mother, Father, and the Hummelstown community. Mother and Father live within the same school district, which allows both parents to remain actively involved in the [C]hildren's lives and for [the Children] to remain actively involved in the life of their community.

The [C]hildren have an equal relationship with both parents in terms of the parent's extent of involvement and duration. The nature and quality of each parent's relationship with [the Children] does not favor one parent over the other. The [C]hildren also

- 10 -

have significant relationships from their school and sports teams that would be terminated by the proposed relocation.

**Relocation Factor 2: The age, developmental stage, and needs of the children and the likely impact the relocation will have on the children's physical, educational and emotional development, taking into consideration any special needs of the children.**

[L.Y.] (12), [R.Y.] (11), and [P.Y.] (8) are relatively young in age, with the older two in the early stages of middle school. Their physical development is well taken care of in the [C]hildren's current location, with [L.Y.] and [R.Y.] active in sports. The court anticipates that similar physical opportunities are available in New York. The court further believes that availability of extended family on both sides in the Wantagh area, notably those of the same age, would emotionally assist the [C]hildren with the transition.

Educationally, [the Children] have done well. [L.Y.] was on the honor roll for academics and [R.Y.] and [P.Y.] regularly receive outstanding as their scores. This might ordinarily argue for maintaining the status quo educationally. However, the court finds that the Massapequa School District[9] in New York is well-rated and is similar if not better than South Hanover Elementary and Lower Dauphin Middle School. Given [the Children's] scholastic achievement and young ages, it is likely they will continue to be successful in a new school setting.

**Relocation Factor 3: The feasibility of preserving the relationship between the nonrelocating party and the children through suitable custody arrangements, considering the logistics and financial circumstances of the parties.**

The proposed relocation, depending on exactly where Mother would purchase a home, would create a separation of approximately three hours and fifteen minutes from Father's

---

[9] While the court references the Massapequa School District throughout its Memorandum Opinion and Custody Order, we observe that Mother presented evidence with regard to the Wantagh Union Free School District. *See* Mother's Exhibits 10 through 13; *see also* N.T., 6/8/20, at 35-36.

current residence. This does create a significant inconvenience and would necessitate a change from the current custody schedule. The parents do have the financial and scheduling ability to confront the challenge that distance creates, although the court recognizes the cost of transportation is not insignificant. Mother has suggested a custody schedule that would permit Father to have much time during school breaks and the summer, which would enable Father to preserve his relationship with the [C]hildren.

**Relocation Factor 4: The children's preference, taking into consideration the age and maturity of the children.**

The court interviewed [L.Y.] on June 11, 2020. [L.Y.] appears to be a bright and confident 12-year-old who was able to express her views. [L.Y.] states that she enjoys spending time with both parents and is comfortable in both homes. Her preference is for the status quo and to remain in the Hummelstown area.

Due to their ages, [R.Y.] and [P.Y.] were not interviewed.

**Relocation Factor 5: Whether there is an established pattern of conduct of either party to promote or thwart the relationship of the children and the other party.**

Mother does not appear to thwart [the Children's] relationship with Father. While Mother's proposed relocation would necessitate a change in the custody schedule, the move does not appear to be motivated by an attempt to thwart Father's relationship with the [C]hildren. As noted above, Mother's proposed custody schedule would ameliorate the impact of the relocation on Father's time with the [C]hildren.

Father does not directly thwart [the Children's] relationship with Mother. The court does have some concerns that Father's lack of co-parenting cooperation is a passive-aggressive way to impact Mother's relationship with the [C]hildren.

**Relocation Factor 6: Whether the relocation will enhance the general quality of life for the party seeking the relocation, including, but not limited to, financial or emotional benefit or educational opportunity.**

- 12 -

Mother's home is currently in foreclosure and will be sold through a sheriff's sale in July [2020]. The court is well-aware that the deed to the home and the mortgage is in Father's name alone. Father has not cooperated with changing the deed and mortgage into Mother's name. At the same time, Father has also withheld child support payments. As a result, the blame for Mothers soon to occur eviction falls squarely on Father. Mother works and intends to return to school to pursue a bachelors' degree in nursing. The court agrees with Mother that moving to Wantagh would benefit her in terms of housing, finances, and childcare. Mother intends to purchase a home with her fiancé[,[10]] who is a New York City firefighter. She has taken her nursing exam (NCLEX) and given the job market for nurses, should quickly find employment in any location. With the availability of her parents and other family members in the Wantagh area, she would also find family to provide childcare while she worked or attended school. The court would expect Mother's quality of life to be enhanced in all areas.

**Relocation Factor 7: Whether the relocation will enhance the general quality of life for the children, including, but not limited to, financial or emotional benefit or educational opportunity.**

Mother presented testimony and evidence as to the similar or greater educational opportunity that a move to the Massapequa School District would afford. As noted above, the court is convinced this move would provide for [the Children's] educational success.

[The Children] have visited family over the last few years in Wantagh area, as well as their maternal grandfather who lives near Wantagh. Both Mother and her fiancé have relatives with children in the same age range. These peer relationships will also assist them in the transition to a new home and school.

It is also clear that the move would improve the immediate financial prospects for the [C]hildren. As noted above, Mother will

_____

[10] Mother testified that she and her boyfriend, T.C., saw marriage in the future but noted that "other things need to happen first." N.T., 6/8/20, at 32. She, however, did not refer to an engagement nor to T.C. as her fiancé.

soon be forced out of the home where she resides. Father has not been reliable in his financial support.

**Relocation Factor 8: The reasons and motivation of each party for seeking or opposing the relocation.**

Mother understandably seeks to relocate to live together with [T.C.], her fiancé. Mother also requests to relocate with the [C]hildren in order to increase her network of support while she is working full-time and in school. The court believes the move would in fact accomplish this goal.

Father opposes the move in order to maintain his custodial periods and his relationship with the [C]hildren. The court also believes that Father's attitude is that it is Mother's choice to move and that the consequences of that choice should accrue to her.

**Relocation Factor 9: The present and past abuse committed by a party or member of the party's household and whether there is a continued risk of harm to the children or an abused party.**

The court does not find any evidence of past or present abuse committed by Mother or anyone in her household.

There is an allegation of an incident where Father pushed Mother down the stairs and put his hands around Mother's neck while he was on top of her. However, no charges were pressed at that time and the court found no reported incidents prior or since this alleged time. The court is concerned with the allegation as the safety of the children is the primary concern and this factor carries great weight when making decisions regarding custody.

**Relocation Factor 10: Any other factor affecting the best interest of the children.**

There are no other relevant factors.

\* \* \*

## Custody Factors

Having addressed the relocation factors, the court now turns its attention to the 16 custody factors enumerated in 23 Pa.C.S. § 5328.

**Factor 1: Which party is more likely to encourage and permit frequent and continuing contact between the children and another party.**

Mother and Father currently have shared custody. There is no report of either parent preventing the children from communicating with the other. A relocation will impair Father's time with the [C]hildren, but Mother is willing to concede substantial summer and holiday time to help ameliorate the impact on Father's custodial time.

**Factor 2: The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the children or an abused party and which party can better provide adequate physical safeguards and supervision of the children.**

The court does not find any evidence of past or present abuse committed by Mother, or anyone in her household.

There is an incident where Father is alleged to have pushed Mother down the stairs and put his hands around Mother's neck in a [choking] motion. Mother testified that one of the [C]hildren was present and begged Father to get off of Mother. Father testified that Mother fell down the stairs while intoxicated[. The trial court further noted: "This testimony is not consistent with Father's testimony in the divorce proceedings, . . . where Father denied knowing the cause of Mother's bruising." N.T., 11/7/19, at 185-87.] No criminal charges were lodged, Mother was never successful in obtaining any protection from abuse orders, and this event does predate more recent custody orders. However, the court has concerns given that this factor impacts the safety of the [C]hildren. The court has no evidence that Father was directly abusive to the [C]hildren.

**Factor 3: The parental duties performed by each party on behalf of the children.**

Mother has performed parental duties for [the Children] when they are in her home. This includes providing the basic necessities such as shelter, clothes, and nutrition, as well as those duties that enrich a child's life, such as educational work and taking [the Children to] activities in the community. Mother has principally made medical and dental appointments for the [C]hildren.

Father has likewise performed parental duties for [the Children] when they are in his home. Father appropriately provides shelter, meals, and care. In addition, Father coached [R.Y.'s] Lacrosse team, does art with [P.Y.], and watches movies with [L.Y.] Father also takes the [C]hildren hiking and camping.

**Factor 4: The need for stability and continuity in the children's education, family life and community life.**

During the separation and divorce proceedings [the Children] have continued at South Hanover Elementary School and Lower Dauphin Middle School when in Mother's home and Father's home. This has created good stability for the [C]hildren during this time of change. In the next school year [R.Y.] will be moving to middle school. [L.Y.] and [R.Y.] are active in sports and age-appropriate community activities.

Relocating to Wantagh, New York, would disrupt this continuity. The strongest argument against relocation and a change in the custodial schedule is that the [C]hildren are doing well in school and developing in their community activities. However, it is not possible for things to remain the same as the home where Mother lives is in foreclosure. While it may be possible to relocate closer to her current location, the family will still face changes.

The court also heard testimony that Father is currently facing a felony criminal charge in Virginia that apparently arose out of a business transaction. Father is presumed innocent, but this charge must be resolved and until it is, the potential for any incarceration poses a risk to the stability that Father can provide for the [C]hildren.

The court further notes that family from both Mother and Father's side is available in New York, educational and community opportunities are available there, and the court believes these

children are resilient. Consequently, the court believes that the [C]hildren will not suffer from a loss of stability or continuity.

**Factor 5: The availability of extended family.**

Mother has no extended family in Harrisburg but has several family members around the Wantagh area, including her father and stepmother, a sister and a stepbrother. Mother's fiancé, [T.C.], also has relatives close to Wantagh who have a relationship with Mother and the [C]hildren, which notably includes nieces in the same age range of the [C]hildren.

Father's parents live in the Hummelstown area and provide frequent childcare for the [C]hildren during Father's custodial periods. It is believed that the [C]hildren have a close relationship with the paternal grandparents. Father also has a sister here, although the sister has limitations that likely prevent the development of a close relationship with the [C]hildren. It was noted that Father has two aunts and a grandmother in the general area of Wantagh, New York, along with cousins that the family visits at least once or twice a year. The [C]hildren should have some familiarity with these extended family members and may facilitate Father's custodial periods should he choose to exercise them in New York.

**Factor 6: The children's sibling relationships.**

[The Children] are the only children through Mother. These children have always been together, and the court would not entertain separating them.

Father has no other children aside from [the Children]. Father's paramour, [N.M.], has three children that are in the same age range as [the Children], and they join together for activities. If this relationship continues, the court believes that the relationship between the [C]hildren could also continue during Father's custodial periods.

**Factor 7: The well-reasoned preference of the children, based on the children's maturity and judgment.**

As noted above, the court interviewed [L.Y.] on June 11, 2020. The court found [L.Y.] mature enough to state a reasoned preference. Her stated preference is for the status quo and

remaining in the Hummelstown area. [L.Y.] appears comfortable with both parents and enjoys spending time with both. When the court inquired about each parent's paramour, [L.Y.] indicated that she gets along with both [N.M.] and [T.C.]. However, the court noted more affinity when [L.Y.] discussed her relationship with [T.C.]

Due to their ages, [R.Y.] and [P.Y.] were not interviewed.

**Factor 8: The attempts of a parent to turn the children against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the children from harm.**

The court does not find any incidents of Mother turning the [C]hildren against Father. There was testimony that Mother may have prematurely told the [C]hildren about the proposed relocation and suggested to them that Father might move as well. Mother disputes this.

Similarly, the court does not find any incidents of Father actively turning the children against Mother. There was testimony that Father used the [C]hildren to convey certain messages about custody that Father denies. As noted above, the court is concerned that Father's lack of co-parenting cooperation at times can have the result of turning the [C]hildren against one or both of the parents.

**Factor 9: Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the children adequate for the children's emotional needs.**

Both parents present an open and loving relationship with [the Children] as evidenced by reporting activities they do together as a group and individually. Both parents deny having conversations with the kids which would be considered adult issues.

Mother reports wanting to do what she can to maintain the life [the Children] are accustomed to and hopes to do this by furthering her career. Mother also reports being heavily involved in school activities and would like to return to doing this once she has more support.

Father reports his preferred parenting style to be structured and predicable. Father reports loving to spend time with [the Children,] educating them and spending time outdoors.

**Factor 10: Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the children.**

Mother reports, and Father corroborates, she primarily schedules all medical appointments. Mother and Father both see to the physical, emotional, developmental, and educational needs; including attending parent/teacher conferences and teaching [P.Y.] to ride a bike.

The court recognizes that a relocation would severely hinder Father's ability to attend school and sports activities, let alone volunteer as a coach which he has done.

**Factor 11: The proximity of the residences of the parties.**

Presently, Father and Mother live within the same school district. Upon relocating to Wantagh, Mother and Father would be a little over three hours apart. While this could impact the court's decision other factors outweigh the distance and a parenting plan can be put in place which supports continued relationships with both parents.

**Factor 12: Each party's availability to care for the children or ability to make appropriate child-care arrangements.**

Mother is working full-time and intends to return to school to further her nursing education. Mother reported a problem with childcare during last summer and reported [T.C.] came forward to support Mother in providing care for the children. Mother has not reported any other issues with childcare. A move to Wantagh would give Mother further support in meeting childcare needs through family.

Father works full-time but has a flexible schedule. When [the Children] are in his home, Father is able to schedule his workday so that he is often at home for several hours. At other time[s] he utilizes paternal grandmother to watch [the Children] when he needs to leave for meetings in the community.

**Factor 13: The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect the children from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.**

There appears to be continued conflict between Mother and Father pursuant to the separation and pending divorce. This is seen in the parents' communication problems, accusations of using [the Children] to convey messages, allegations of alcoholism, and Father's lack of candor and timely notice about the pending foreclosure.

Mother denies using [the Children] to discuss adult issues or to convey information to Father. Mother reports using a co-parenting application and text messages to communicate with Father. Mother testified that Father does not respond consistently.

Father also denies sharing adult issues with [the Children]. Father acknowledged he does not use the co-parenting application and only responds to text messages that he deems relevant to the [C]hildren's needs. Limiting the communication between Father and Mother in this way may eliminate some potential conflict, however, it prevents the opportunity to co-parent in a way that is in the best interest of the [C]hildren.

**Factor 14: The history of drug or alcohol abuse of a party or member of a party's household.**

Father's testimony suggested that Mother has an issue with alcohol. This accusation has been voiced at other times in the history of this case. However, there is no evidence to substantiate this allegation.

There is no evidence of drug or alcohol abuse by Father.

**Factor 15: The mental and physical condition of a party or member of a party's household.**

There is no evidence that either Mother or Father has a mental or physical condition, therefore, this factor does not impact the court's decision.

**Factor 16: Any other relevant factor.**

There are no other relevant factors.

Memo. Op., 6/12/20, at 2-14.

On appeal, Father challenges the trial court's determinations as to the Section 5337(h) relocation factors and award of custody. Father asserts the court erred as a matter of law and abused its discretion in approving Mother's relocation, by failing to properly apply the required factors in determining if the proposed relocation is in the best interests of the Children. Father's Brief at 8. Specifically, Father challenges the court's analysis as to relocation factors 1, 3, 4, 6, and 7. **Id.** at 10. **Id.** Significantly, Father does not specifically discuss the custody factors with his challenge.

As to relocation factor 1 (the nature, quality, extent of involvement and duration of the children's relationships with the party proposing to relocate and with the nonrelocating party, siblings and other significant persons) Father highlights the Children's relationships with him and his parents and in the community, which were recognized by the trial court. Father's Brief at 10-11. Father argues, "These significant relationships with the grandparents and friends, as well as the strong relationship with [Father], will all be terminated once the Children relocate from Hummelstown, Pennsylvania to Wantagh, New York." **Id.** at 11.

As to relocation factor 3 (the feasibility of preserving the relationship between the nonrelocating party and the children through suitable custody

arrangements, considering the logistics and financial circumstances of the parties) Father asserts,

> While the [trial] court does address [this] factor, it does so in a cursory manner, with only four sentences, giving no explanations or references to the record. The [trial] court notes in its opinion that **depending** on where Mother purchased her home, it would "create a separation of approximately three hours and fifteen minutes from Father's current residence." It acknowledges that this would create significant inconvenience for [Father] and drastically change the current 2-2-5-5 custody schedule. However, the [trial] court fails to address the fact that Mother does not have a house in Nassau County, New York, which is key to adequately determine how long the transportation to and from would be. The "separation" to and from New York can range anywhere from a three to eight-hour trip depending on the day and time of departure. Without a home established, there is no way for the court to adequately gauge the time of separation between [Father]'s current home and relocating the Children in New York. This factor includes facts in the case that require adequate consideration and analysis; the court failed to do so, and thus abused its discretion in determining that this factor weighed more in favor of [Mother] without giving it adequate consideration. The [trial] court notes that Father's time with [C]hildren will dramatically decrease from being on a weekly basis to only two weekends a month. The [trial] court's conclusion that Father could maintain a meaningful relationship with the minor children if they relocated to New York is simply not feasible.

Father's Brief at 11-12.

As to factor 4 (the children's preference, taking into consideration the age and maturity of the children), Father maintains that the court did not give adequate weight to L.Y.'s preference to maintain the status quo. Father's Brief at 12-13. Father avers,

> A child's preference should carry significant weight and be carefully considered when determining what would be in their best interests. *Greib v. Driban*, [458 A.2d 1006, 1007] (Pa. Super. 1983). In addition, the [c]ourts shall provide greater

consideration to the child's preference if they are older and portray a sense of maturity and understanding of the circumstances surrounding them. [*Id.*] L.Y. was very clear with the Trial Judge that she wanted to remain in the Hummelstown area. In its opinion, the [trial] court noted that L.Y. "appear[ed] to be a bright and confident 12-year-old who was able to express her views." During the interview, the court noted that L.Y. expressed that her "preference is to remain in the Hummelstown area and maintain the status quo."

*Id.* at 12-13 (record citations omitted).

As to factor 6 (whether the relocation will enhance the general quality of life for the party seeking the relocation, including, financial or emotional benefit or educational opportunity), and factor 7 (whether the relocation will enhance the general quality of life for the children, including financial or emotional benefit or educational opportunity), Father argues Mother failed to provide a new home address in New York or the intended school district for the Children. Father also maintains that Mother admitted she did not have employment in New York nor was she accepted into a higher education program in New York. Father's Brief at 13. He concludes, "Mother did not have any concrete and established benchmarks for the [c]ourt to adequately weigh this factor." *Id.* After careful review, we decline to disturb the court's custody order.

In supporting its determinations, the trial court reasoned:

As stated previously, the [c]ourt reviewed all relocation and custody factors when determining the best interest of the [C]hildren to relocate with Mother. The [c]ourt also considered the impact it may have on a meaningful relationship with Father. In the [c]ourt's view it is in the best interest of the [C]hildren to

- 23 -

permit Mother to relocate with the children to Wantagh, New York and grant Father ample opportunity for regular contact.

1925(a) Op. at 4.

"All of the factors listed in section 5328(a) are required to be considered by the trial court when entering a custody order." ***J.R.M. v. J.E.A.,*** 33 A.3d 647, 652 (Pa. Super. 2011). Although the court is required to give "weighted consideration to those factors which affect the safety of the child" pursuant to 23 Pa.C.S. § 5328(a) and 23 Pa.C.S. § 5337(h), this Court has stated:

> **It is within the trial court's purview as the finder of fact to determine which factors are most salient and critical in each particular case**. ***See A.D. v. M.A.B.,*** 989 A.2d 32, 35-36 (Pa.Super. 2010) ("In reviewing a custody order ... our role does not include making independent factual determinations. . . . In addition, with regard to issues of credibility and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses first-hand."). . . .

***M.J.M. v. M.L.G.***, 63 A.3d 331, 339 (Pa. Super. 2013) (emphasis added).

A careful review of Father's claims, against the trial court's findings, reveals a challenge to the court's findings of fact and determinations regarding credibility and weight of the evidence. Father, in essence, questions the court's conclusions and seeks this Court to re-weigh the evidence. This we cannot do. As stated above, the trial court's findings of fact and determinations regarding credibility and weight of the evidence are not disturbed absent an abuse of discretion. ***See C.R.F.***, 45 A.3d at 443. As we stated in ***King v. King***, 889 A.2d 630 (Pa. Super. 2005), "It is not this Court's function to determine whether the trial court reached the 'right' decision;

- 24 -

rather, we must consider whether, 'based on the evidence presented, given [sic] due deference to the trial court's weight and credibility determinations,' the trial court erred or abused its discretion. . . ." ***Id.*** at 632. After a thorough review of the record, we find no abuse of discretion. Further, to the extent Father challenges the weight attributed to any factor by the trial court, we likewise find no abuse of discretion. As stated above, the amount of weight that a trial court gives to any one factor is within its discretion. ***See M.J.M.***, 63 A.3d at 339.

In the case sub *judice*, the trial court analyzed and addressed each of the custody and relocation factors pursuant to Section 5328(a) and Section 5337(h). After careful review of the record, we determine the court's determinations are supported by competent evidence in the record, and we will not disturb them. ***See C.R.F.***, 45 A.3d at 443. For the foregoing reasons, we affirm the order of the trial court.

Order affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 01/28/2021